UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSTY LEE ROUSE,

                Plaintiff,

    v.

KEVIN HANSEN, *et al.*,

                Defendants.

CASE NO. 3:24-cv-05068-TL-GJL

ORDER DECLINING TO SERVE COMPLAINT

Plaintiff Rusty Lee Rouse, proceeding *pro se* and *In Forma Pauperis*, filed this civil rights action under 42 U.S.C. § 1983. Having reviewed and screened Plaintiff's Proposed Complaint under 28 U.S.C. § 1915A, the Court finds the Complaint deficient and provides Plaintiff leave to file an amended pleading by **March 28, 2024**, to cure the deficiencies identified below.

## I.      BACKGROUND

The following background draws from Plaintiff's Proposed Complaint. *See* Dkts. 1-1, 3-1. Plaintiff's factual allegations are taken as true for this screening, but his legal conclusions are not.

**A.      Plaintiff was Denied Medical Care and Experienced Unhygienic Conditions**

Plaintiff's allegations arise out of two periods of pretrial detention at Mason County Jail ("MCJ"). Dkt. 1-1, at 6–15. The first relevant period began in July 2023. *Id.* at 6. Upon entry to MCJ, Plaintiff experienced withdrawals from fentanyl abuse. *Id.* Plaintiff claims that MCJ medical staff should have administered a suboxone taper to ease his opioid withdrawal symptoms. *Id.* at 7–8. As Plaintiff tells it, his unsupported withdrawal was extremely painful—his blood pressure was elevated, he could not sleep, and, on or around day two of his detention, Plaintiff lost control of his bowels. *Id.* at 6–7.

As a result of his incontinence, Plaintiff's clothing and bedding were soiled. *Id.* at 7. Plaintiff used the emergency intercom in his cell to inform MCJ staff that he needed a shower, new clothing, and new bedding. *Id.* Receiving no response, Plaintiff went on to inform each security officer who came to his cell for hourly wellness checks of his soiled condition. *Id.* Despite his repeated requests, Plaintiff states that he was forced to remain in his soiled cell for approximately 8 hours. *Id.* It was not until Plaintiff began banging on his door and yelling for assistance that Sergeant Randy Newell allowed him to shower and provided him with clean clothing and linens. *Id.* Plaintiff claims that Sergeant Newell falsely told him that he did not know Plaintiff had soiled himself. *Id.* at 7–8.

After his withdrawal symptoms subsided, Plaintiff spoke with the mental health unit at MCJ. *Id.* He informed them that he was experiencing visual hallucinations and nightmares and that he was supposed to be taking certain prescribed antidepressant and other psychiatric medications. *Id.* Plaintiff states he was not given psychiatric medication during this first period of detention at MCJ. *Id.*

Plaintiff's second period of detention at MCJ began in December 2023. *Id.* Before his return, Plaintiff had begun taking suboxone to aid with his opioid addiction. *Id.* Plaintiff states he

was deprived of suboxone and other medications upon his reentry to MCJ. *Id.* at 9. He further states that the immediate stoppage of suboxone caused him to undergo a second round of opioid withdrawals. *Id.*

As before, Plaintiff experienced a slew of adverse side effects, including mood swings, cold sweats, and diarrhea. *Id.* Approximately a month after his second opioid withdrawal, Plaintiff was prescribed and given suboxone. *Id.* During that same period, Plaintiff renewed his request for psychiatric medications but states he is still being denied access to adequate treatment for his hallucinations and depression. *Id.*

**B.      Plaintiff's Private Medical Information was Improperly Shared with Staff**

During one of his detention periods, Plaintiff sent several medical messages, known as "kites," requesting to be placed on a lactose-free diet. *Id.* at 12. Plaintiff believes the information disclosed in these medical kites should not be shared with security officers. *Id.* After he sent one such kite, Sergeant Newell told him that he needed to stop sending duplicate kites. *Id.* Believing that Nurse Bree Borden ("Nurse Borden") improperly discussed his private medical information with Sergeant Newell, Plaintiff wrote an administrative grievance. *Id.* Chief Kevin Hansen ("Chief Hansen") received Plaintiff's grievance and dismissively told him it was "unfounded." *Id.*

**C.      Plaintiff Could Not Access the Law library During the Day or Watch Television**

According to Plaintiff, detainees at MCJ are only able to access the law library after 9:30 p.m. *Id.* at 14. Plaintiff has unsuccessfully requested daytime access to the law library because he takes medication that causes increased drowsiness during the evening hours. *Id.* For this reason and because MCJ does not have a television, Plaintiff believes that MCJ and Chief Hansen fail to provide detainees with adequate access to information. *Id.* at 15. Plaintiff states that MCJ is the

1    only county jail without a television, which deprives him and other MCJ detainees from access to

2    news and religious programming. *Id.*

3                          **II.       STANDARD OF REIVEW**

4           Under the Prison Litigation Reform Act of 1996, the Court must screen proposed

5    complaints brought by prisoners seeking relief against a governmental entity or officer or

6    employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must "dismiss the

7    complaint, or any portion of the complaint, if the complaint: (1) is frivolous, malicious, or fails to

8    state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant

9    who is immune from such relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §1915(e)(2)(B);

10   *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Dismissal on these grounds counts

11   as a "strike" under 28 U.S.C. § 1915(g).

12          To sustain a 42 U.S.C. § 1983 claim, Plaintiff must show that he suffered a violation of

13   rights protected by the Constitution or created by federal statute, and that the violation was

14   proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487

15   U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff must

16   provide more than conclusory allegations; he must set forth specific, plausible facts to support

17   his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–83 (2009).

18                          **III.       DISCUSSION**

19          Plaintiff organizes his claims into three counts. Dkt. 1-1. In Count I, Plaintiff alleges that

20   being made to sit in his own feces, being forced to undergo unsupported opioid withdrawals, and

21   being denied psychiatric medication constitute "cruel and unusual punishment," "deliberate

22   indifference to medical needs," and violations of the Eighth and Fourteenth Amendments to the

23   United States Constitution. *Id.* at 6. In Count II, Plaintiff alleges that disclosure of his medical

24

information to MCJ security officers is a "breach of confidentiality" that violates both the Health

Insurance Portability and Accountability Act ("HIPAA") and the Due Process Clause of the Fifth

Amendment. *Id.* at 11. Finally, in Count III, Plaintiff alleges that the denial of daytime access to

the law library and the lack of television at MCJ are violations of the First, Eighth, and

Fourteenth Amendments. *Id.* at 14.

Upon review of the Proposed Complaint, the Court notes the following deficiencies:

**(1)** In all Counts, Plaintiff named an improper defendant and failed to state a claim

against Mason County. "In a legal action involving a county, the county itself is the only legal

entity capable of suing and being sued." *See Nolan v. Snohomish County*, 59 Wn. App. 876, 883,

802 P.2d 792 (1990)). As a result, only the primary municipality, county, or local government

unit can be sued as a "person" under § 1983. *Monell v. Department of Soc. Servs. of City of New

York*, 436 U.S. 658, 691–94 (1978). Still, a county cannot be held liable under § 1983 simply

because it employs someone who violates the law. *Monell*, 436 U.S. at 691–94. Instead, to hold a

county liable, a plaintiff must identify a county-level "policy" or "custom" that caused his

alleged injury. *Bd. of the Cnty. Comm'rs of Bryant Cnty. v. Brown*, 520 U.S. 397, 403 (1997)

(citing *Monell*, 436 U.S. at 694).

Here, Plaintiff has improperly named MCJ—a subunit of Mason County—as a defendant

in this suit. And although Defendant Mason County could conceivably be a proper defendant,

Plaintiff has failed to plead a § 1983 claim against the County. In Count I, Plaintiff does not

identify a Mason County policy or custom that caused his alleged injuries. Rather, Plaintiff only

identifies some Mason County-level policies and practices that he believes contributed to his

injuries in the remaining counts, specifically Counts II and III. Accordingly, Defendant Mason

County is not a properly named defendant in Count I. And even though it is a properly named

Defendant for the other counts, as explained below, those claims against Defendant Mason County are deficient for other reasons.

Therefore, in any amended complaint, Plaintiff should only include a municipal, local, or county entity, such as Mason County, as a defendant only (1) if that entity that may be sued under § 1983, (2) if he is able to identify a policy or custom of that entity that caused him injury, **and** (3) if he is able to set forth facts showing a constitutional violation by that entity.

**(2)** Also in all Counts, Plaintiff has failed to state a claim against several individually named defendants. A plaintiff in a § 1983 action must allege facts showing how individually named defendants caused or personally participated in causing the harm alleged in the complaint. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). Supervisory personnel cannot be held liable for the actions of their subordinates under a theory of vicarious liability, meaning that supervisors are only liable for their own acts or failures to act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff lists more than half a dozen defendants who are not mentioned in his factual allegations. *See* Dkt. 1-1. These defendants include Deputy Britten, Angela Brown, [First Name Unknown] Feran, David Guidrey, Shannon Moe, Julia Rice, Jennifer Saucier, Shannon Slack, and Summit Foods. *Id.* at 4–6. Without any factual allegations against them, these individuals are not properly included in this suit.

Thus, in any amended pleading, Plaintiff should only include an individual as a defendant if he is able to set forth facts showing they caused or personally participated in causing harm that amounts to a constitutional violation.

**(3)** Count I is improperly pled under the Eighth Amendment. As a pretrial detainee, Plaintiff's right to hygienic conditions and medical care is guaranteed by the Fourteenth

Amendment, not the Eighth Amendment. *See Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 924 n.2 (9th Cir. 2017) ("The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual punishment claims of pretrial detainees."); *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018) ("Jail officials have a duty to ensure that [pretrial] detainees are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety.").

In assessing conditions of confinement for pretrial detainees, the Court considers whether the conditions amount to punishment, meaning that the conditions cause harm that significantly exceeds the typical discomforts of incarceration. *See Doe v. Kelly*, 878 F.3d 710, 714, 720 (9th Cir. 2017). The Court evaluates a pretrial detainee's Fourteenth Amendment claim under an objective deliberate indifference standard. *See Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015) and *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). Under this standard, Plaintiff must plausibly allege facts showing (1) that a defendant's acts or omissions were objectively unreasonable and (2) that the challenged actions were not rationally related to a legitimate government objective. *See Kingsley*, 576 U.S. at 397–98. Examples of legitimate government objectives are "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of the prisoners." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *holding limited by Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Therefore, in any amended pleadings, Plaintiff should plead his claims related to the conditions of his pretrial confinement under the Fourteenth Amendment only, identify the specific actions he believes violated his rights, and explain how those actions were not rationally related to a legitimate government objective.

1       **(4)**     In Count II, Plaintiff contends that Nurse Borden, Sergeant Newell, and Mason

2    County breached his right to confidentiality and violated HIPAA by discussing the information

3    disclosed in his medical kite. Dkt. 1-1, at 11–13. However, private individuals cannot sue for

4    relief under HIPAA. *See Webb v. Smart Documents Sols, LLC*, 499 F.3d 1078, 1081 (9th Cir.

5    2007). Therefore, this claim is deficient in a manner that cannot be cured through amended

6    pleadings.

7        **(5)**     Count II is also deficient because Plaintiff has not identified a constitutionally

8    protected interest at stake in his Due Process claim. The procedural guarantees of the Fifth and

9    Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected

10    liberty or property interest is at stake.[1] *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003);

11    (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). When deciding whether the

12    Constitution protects an alleged liberty interest of a prisoner, the Court considers whether the

13    practice or sanction in question "is within the normal limits or range of custody which the

14    conviction has authorized the State to impose." *See Meachum v. Fano*, 427 U.S. 215, 225 (1976);

15    *Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir. 2000) ("[A] prisoner possesses a liberty interest

16    under the federal constitution when a change occurs in confinement that imposes an 'atypical and

17    significant hardship…in relation to the ordinary incidents of prison life.'") (quoting *Sandin v.

18    Conner*, 515 U.S. 472, 484 (1995)).

19        Here, Plaintiff claims that his right to a confidential medical grievance procedure has

20    been violated by Nurse Bree, Sergeant Newell, and Mason County. Dkt. 1-1, at 10–14. Even

21    though Plaintiff is entitled to greater range of protected liberty interests than a convicted

22

23

24

---

[1] Because Plaintiff was detained by Mason County, any due process claim must be brought under the Fourteenth Amendment, not the Fifth.

prisoner, *see generally Stone v. City of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) ("[P]retrial detainees … possess greater constitutional rights than prisoners"), he has still failed to identify a constitutionally protected interest.

First, Plaintiff has no stand-alone Due Process rights to a specific, or even an efficient, grievance process. *See Peoples v. Schwarzenegger*, 402 F. App'x 204, 205 (9th Cir. 2010); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance does not constitute a Due Process violation. *See Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.").

Second, the screening of Plaintiff's medical kites by security officers is within the "normal limits" of custody that Defendant Mason County may impose. To ensure the safety of its pretrial detainees, Mason County may authorize security officers to review medical kites for emergency medical situations. Even beyond responding to emergencies, it is appropriate for security officers to screen medical kites so that medical personnel are not inundated with duplicative requests—the precise situation Plaintiff describes in his Proposed Complaint. *See* Dkt. 1-1, at 11–13.

As a result, Plaintiff has failed to identify a constitutionally protected interest and this deficiency will likely not be cured in any amended pleadings.

**(6)**     In Count III, Plaintiff's law library claim against Chief Hansen, Sergeant Newell, and Mason County is deficient. Integral to a prisoner's fundamental right to access courts is the right to access the law library. *See Allen v. City & Cnty. of Honolulu*, 39 F.3d 936, 939 (9th Cir.

1994); *Evans v. El Dorado Hill*, 457 F. App'x 618, 619 (9th Cir. 2011). To state a denial of

access claim, a prisoner must allege he was denied access to the law library and that this denial

"resulted in actual injury and hindered his efforts to pursue a non-frivolous legal claim

challenging his sentence or conditions of confinement." *Evans*, 457 F. App'x at 619 (citing

*Lewis v. Casey,* 518 U.S. 343, 349–51, 353 n. 3 (1996)).

Here, Plaintiff does not allege he was denied access to the law library, rather he alleges

that he could not access the library during the hours of his choice. Even assuming this could

serve as foundation for a successful claim, Plaintiff's claim is deficient for another reason—he

does not identify an actual injury caused by his lack of access. Instead, Plaintiff makes sweeping

allegations that the law library contains information that is "imperative" to his decision making

and "vital" to his case. Dkt. 1-1, at 15. That is not enough to state a claim.

Therefore, in any amended pleading, Plaintiff should name a proper defendant, detail the

specific actions taken to deny him access to the law library, and identify an actual injury related

to his alleged lack of library access.

(7)      Finally, despite his creative efforts to state a claim under the First Amendment,

Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment based on the

lack of television at MCJ, this aspect of Count III is not only deficient, but also frivolous.

To the extent that Plaintiff attempts to state a Free Exercise claim under the First

Amendment for lack of televised religious programming at MCJ, he has failed to do so. Briefly,

to state a Free Exercise claim, a plaintiff must allege that "the government action in question

substantially burdens the [plaintiff's] practice of [their] religion." *Jones v. Williams*, 791 F.3d

1023, 1031 (9th Cir. 2015). "A substantial burden…place[s] more than an inconvenience on

religious exercise; it must have a tendency to coerce individuals into acting contrary to their

religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma,* 723 F.3d 984, 1011 (9th Cir. 2013). Plaintiff in no way alleges that his inability to watch televised religious programming is a substantial burden on his sincerely held belief. Plaintiff has thus failed to state a First Amendment Free Exercise claim and it is unlikely he will be able to do so in any amended pleadings.

Next, as discussed, Plaintiff's right to adequate conditions of confinement at MCJ is guaranteed by the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment. Even so, neither constitutional amendment guarantees him the right to watch television. *See Wilson v. Dir. of Adult Institutions*, 407 F. App'x 111, 112 (9th Cir. 2010) (affirming dismissal of prisoner's frivolous claim based on lack of television); *Castillo v. Solano Cnty. Jail,* No. CIV S-09-0341 CKD P, 2012 WL 396032, at *6 (E.D. Cal. Feb. 7, 2012), *report and recommendation adopted by* 2012 WL 1077195 (Mar. 29, 2012) (explaining there is no Fourteenth Amendment right to television during pretrial confinement). Thus, even if Plaintiff had pleaded his claim under the correct amendment, MCJ's lack of television is not a constitutionally deficient condition of confinement.

Lastly, assuming Plaintiff is correct that MCJ is the only jail without a television, this does not give rise to liability under the Equal Protection Clause. "The Equal Protection Clause does not require conditions, practices, and rules at county and state correctional facilities to be identical." *Garnica v. Washington Dep't of Corr*., 965 F. Supp. 2d 1250, 1275 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016) (citation omitted). An allegation that "different persons are treated differently" is not enough to state an Equal Protection claim. *See Griffin v. County Sch. Bd. of Prince Edward County,* 377 U.S. 218, 230 (1964). Rather, a plaintiff must plausibly allege either that a defendant acted with the intent to discriminate against him based on

1   his membership to a protected class or that a defendant's intentional act lacked any rational basis.

2   *See Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013).

3       Here, Plaintiff does not allege that he was denied access to a television based on his

4   membership to a protected class nor does he identify an intentional act lacking any rational basis.

5   Therefore, this final attempt to state a claim based on his inability to watch television fails.

6       Given the frivolous nature of his television claim, it is unlikely Plaintiff will be able to

7   cure the above-mentioned deficiencies in any amended pleadings.

8                           **IV.    CONCLUSION**

9       Because of the deficiencies described above, the Court declines to serve the Proposed

10  Complaint or to direct that an answer be filed. Notwithstanding the frivolousness of some of his

11  claims, Plaintiff is granted leave to amend his Complaint and, if possible, to correct the above

12  stated deficiencies, on or before **March 28, 2024**. The amended complaint must be filed under

13  the same case number as this one, and will operate as a complete substitute for, rather than a

14  mere supplement to, the Proposed Complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th

15  Cir. 1992). If no amended complaint is timely filed, or if Plaintiff files an amended complaint

16  that fails to correct the deficiencies identified above, the Court may recommend dismissal of

17  Counts II and III against Sergeant Newell and of all claims against Deputy Britten, Angela

18  Brown, Nurse Borden, [FNU] Feran, David Guidrey, Chief Hansen, Mason County, Mason

19  County Jail, Shannon Moe, Julia Rice, Jennifer Saucier, Shannon Slack, and Summit Foods.

20      Dated this 27th day of February, 2024.

21

22

23                                  Grady J. Leupold
                                    United States Magistrate Judge
24