UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RUSTY LEE ROUSE,

                Plaintiff,

v.

KEVIN HANSEN, *et al.*,

                Defendants.

CASE NO. 3:24-cv-05068-TL-GJL

REPORT AND RECOMMENDATION

Noting Date: April 12, 2024

      The District Court has referred this prisoner civil rights action to United States Magistrate Judge Grady J. Leupold. After being advised of the pleading deficiencies in his initial Complaint (Dkts. 1-1, 4), Plaintiff Rusty Lee Rouse, proceeding *pro se* and *In Forma Pauperis*, filed a Second Amended Complaint (Dkt. 8). Having reviewed and screened the Second Amended Complaint under 28 U.S.C. § 1915A, the Court finds that several deficiencies remain and recommends that deficient claims and Defendants be **DISMISSED without prejudice**.

      **I.    BACKGROUND**

      Plaintiff, who is currently incarcerated at Washington Corrections Center ("WCC"), initiated this prisoner civil rights action concerning his pretrial detention at Mason County Jail

REPORT AND RECOMMENDATION - 1

("MCJ"). Dkts. 1-1, 8. The Court screened and declined to serve Plaintiff's initial Complaint (Dkt. 1-1) because many of the claims pled therein were deficient. Dkt. 4. After informing Plaintiff of his pleading deficiencies, the Court granted him thirty days of leave to amend and cure his pleadings. *Id.*

During the amendment period, Plaintiff filed an Amended Complaint. Dkt. 6. Two days later and still during the amendment period, Plaintiff filed a Second Amended Complaint (Dkt. 8), which is now the operative complaint. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927 (9th Cir. 2012) ("[T]he general rule is that an amended complaint supersedes the original complaint and renders it without legal effect.") (cleaned up); *see also Valadez–Lopez v. Chertoff*, 656 F.3d 851, 857 (9th Cir. 2011) ("[I]t is well-established that an amended complaint supersedes the original, the latter being treated thereafter as non-existent.") (quotations omitted).

The factual allegations in Plaintiff's Second Amended Complaint are, by and large, the same as those alleged in his initial Complaint (Dkt. 1-1), which were outlined in detail in the Court's Screening Order (Dkt. 4). Thus, the Court provides only a brief summary of Plaintiff's amended claims here with a greater discussion of his new allegations provided below.

Plaintiff organizes his claims into four counts. Dkt. 8. In Count I, Plaintiff alleges that he was forced to sit in his own feces, undergo unsupported opioid withdrawals, and was denied psychiatric medication while detained at MCJ, all in violation of the Fourteenth Amendment to the United States Constitution. *Id*. at 5–7. In Count II, Plaintiff alleges that disclosure of his private medical information to MCJ security officers violates the federal constitution and the Uniform Health Care Information Act, Washington Revised Code § 70.02 ("UHCIA"). *Id.* at 3–4. Finally, in Counts III and IV, Plaintiff alleges that MCJ's practice of serving vegetarian-only religious meals on reusable trays places a substantial burden on his sincerely held religious

REPORT AND RECOMMENDATION - 2

1  beliefs in violation of the Religious Land Use and Institutionalized Persons Act of 2000

2  ("RLUIPA"), 42 U.S.C. § 2000cc-1(a)(1)-(2), and the Free Exercise Clause of the First

3  Amendment. *Id.* at 8–14.

4      As relief, Plaintiff seeks compensatory and punitive damages and an injunction ordering

5  MCJ to serve meat-based religious meals on disposable trays. *Id.* at 16.

6                **II.    STANDARD OF REVIEW**

7      Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court must screen

8  complaints brought by prisoners seeking relief against governmental entities and the officers and

9  employees thereof. 28 U.S.C. § 1915A(a). The Court must "dismiss the complaint, or any portion

10 of the complaint, if the complaint: (1) is frivolous, malicious, or fails to state a claim upon which

11 relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such

12 relief." 28 U.S.C. § 1915A(b); *see also* 28 U.S.C. §1915(e)(2)(B); *Barren v. Harrington*, 152

13 F.3d 1193, 1194 (9th Cir. 1998). Dismissal on these grounds counts as a "strike" under 28 U.S.C.

14 § 1915(g).

15     To sustain a 42 U.S.C. § 1983 claim, Plaintiff must show that he suffered a violation of

16 rights protected by the Constitution or created by federal statute, and that the violation was

17 proximately caused by a person acting under color of state or federal law. *West v. Atkins*, 487

18 U.S. 42, 48 (1988); *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Plaintiff must

19 provide more than conclusory allegations; he must set forth specific, plausible facts to support

20 his claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–83 (2009).

21               **III.    DISCUSSION**

22     Having reviewed the Second Amended Complaint (Dkt. 8), the Court finds that Plaintiff

23 cured the pleading deficiencies in his conditions of confinement claims arising out of the

24

REPORT AND RECOMMENDATION - 3

unsanitary conditions, unsupported withdrawals, and denial of mental health treatment he allegedly experienced at MCJ. Dkt. 8 at 5–7. Accordingly, Plaintiff may proceed on his Fourteenth Amendment claims pled in Count I of the Second Amended Complaint.[1] However, the Court finds the deficiencies in Counts II, III, and IV, which make dismissal of those claims appropriate.

A.   **Plaintiff Failed to Cure Deficiencies in Count II**

In Count II of his Second Amended Complaint, Plaintiff alleges that several Defendants breached his right to medical confidentiality by discussing the information disclosed in his medical grievances, which are commonly referred to as "kites". Dkt. 8 at 4–4. A variation of this claim was also brought in Count II of his initial Complaint. Dkt. 1-1 at 11–13 (alleging violations of the Due Process Clause and the Health Insurance Portability and Accountability Act ("HIPAA")). After screening that claim, the Court advised Plaintiff of the following deficiencies:

> In Count II, Plaintiff contends that Nurse Borden, Sergeant Newell, and Mason County breached his right to confidentiality and violated HIPAA by discussing the information disclosed in his medical kite. Dkt. 1-1, at 11–13. However, private individuals cannot sue for relief under HIPAA. *See Webb v. Smart Documents Sols, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). Therefore, this claim is deficient in a manner that cannot be cured through amended pleadings.
>
> Count II is also deficient because Plaintiff has not identified a constitutionally protected interest at stake in his Due Process claim. The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake. *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003); (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)). When deciding whether the Constitution protects an alleged liberty interest of a prisoner, the Court considers whether the practice or sanction in question "is within the normal limits or range of custody which the conviction has authorized the State to impose." *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Resnick v. Hayes,* 213 F.3d 443, 448 (9th Cir. 2000) ("[A] prisoner possesses a liberty interest under the federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship…in relation to the

---

[1] Pending the adoption of this Report and Recommendation, the Undersigned will order service of sufficiently pled claims in a separate Order.

REPORT AND RECOMMENDATION - 4

>
> ordinary incidents of prison life.'") (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).
>
> Here, Plaintiff claims that his right to a confidential medical grievance procedure has been violated by Nurse [Borden], Sergeant Newell, and Mason County. Dkt. 1-1, at 10–14. Even though Plaintiff is entitled to greater range of protected liberty interests than a convicted prisoner, *see generally Stone v. City of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) ("[P]retrial detainees … possess greater constitutional rights than prisoners"), he has still failed to identify a constitutionally protected interest.
>
> First, Plaintiff has no stand-alone Due Process rights to a specific, or even an efficient, grievance process. *See Peoples v. Schwarzenegger*, 402 F. App'x 204, 205 (9th Cir. 2010); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance does not constitute a Due Process violation. *See Evans v. Skolnik*, 637 Fed. Appx. 285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that a prison official inappropriately denied or failed to adequately respond to a grievance, without more, does not state a claim under § 1983.").
>
> Second, the screening of Plaintiff's medical kites by security officers is within the "normal limits" of custody that Defendant Mason County may impose. To ensure the safety of its pretrial detainees, Mason County may authorize security officers to review medical kites for emergency medical situations. Even beyond responding to emergencies, it is appropriate for security officers to screen medical kites so that medical personnel are not inundated with duplicative requests—the precise situation Plaintiff describes in his Proposed Complaint. *See* Dkt. 1-1, at 11–13.

Dkt. 4 at 8–9 (footnotes excluded). *See also Seaton v. Mayberg*, 610 F.3d 530, 534–35 & n. 19 (9th Cir. 2010) (a prison's legitimate penological concerns in disclosing medical information are broad and substantial). Plaintiff was also informed it was unlikely he would be able to cure these deficiencies through amendment (*Id.* at 9) and, if he filed an amended complaint with uncured deficiencies, the Court would recommend dismissal of his claims. *Id.* at 12.

Upon review, Count II of the Second Amended Complaint includes many of the same deficiencies identified in the Court's Prior Screening Order. Dkt. 8 at 3–4. Additionally, for the

REPORT AND RECOMMENDATION - 5

first time in his Second Amended Complaint, Plaintiff attempts to state a claim under state law, specifically the UHCIA. *Id.* at 4. But this additional attempt to state a claim is unavailing.

Under the UHCIA, health care information may be disclosed without patient consent to "[a]n official of a penal or other custodial institution in which the patient is detained." Wash. Rev. Code § 70.02.200; *State v. Sanchez*, 177 Wash. 2d 835, 849 (2013) ("While it is certainly true that chapter 70.02 RCW and HIPAA protect [medical information], *that protection is conditional*.") (citations omitted; emphasis added). This is precisely what Plaintiff alleges occurred here. Dkt. 8 at 3–4.

Accordingly, Count II should be dismissed for failure to cure deficiencies necessary to state a cognizable claim.

**B.   The Newly Pled Religious Accommodation Claims in Counts III and IV are Deficient**

Next, Plaintiff previously alleged a violation of the Free Exercise Clause of the First Amendment to the United States Constitution based on the lack of religious television programing at MCJ. Dkt. 1-1 at 14–15. After he was advised of the deficiencies with that claim, Plaintiff chose to remove the claim from his amended pleadings. Dkt. 6 at 9. However, for the first time in his Second Amended Complaint, Plaintiff alleges two new violations of the First Amendment and RLUIPA. Dkt. 8 at 8–14. These newly added claims should be dismissed for at least three reasons.

1.   <u>Plaintiff has failed to state cognizable religious accommodation claims</u>.

First, Plaintiff fails to plausibly allege that Defendants substantially burdened his sincerely held religious beliefs in violation of the First Amendment or RLUIPA. As stated in the Court's Screening Order:

> [T]o state a Free Exercise claim, a plaintiff must allege that "the government action in question substantially burdens the [plaintiff's] practice of [their] religion." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015). "A substantial burden…place[s] more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma,* 723 F.3d 984, 1011 (9th Cir. 2013).

Dkt. 4 at 10–11. Plausibly alleging a substantial burden is also a necessary element of a RLUIPA claim. *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1121 (9th Cir. 2000); *Warsoldier v. Woodford*, 418 F.3d 989, 995 (9th Cir. 2005) ("[A] 'substantial burden' on 'religious exercise' must impose a significantly great restriction or onus upon such exercise.") (quoting *San Jose Christian College v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir. 2004)).

In his Second Amended Complaint, Plaintiff complains that two practices related to meal service at MCJ substantially burdened his religious beliefs: (1) serving vegetarian-only Kosher meals and (2) serving all religious meals on reusable trays. Dkt. 8 at 8–14. The Court assumes Plaintiff's religious beliefs are sincerely held. Even so, under the circumstances alleged here, neither practice imposed a substantial burden on those beliefs.

<u>*Vegetarian Kosher Meals*</u>. With respect to religious diets, prisoners "have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987). A substantial burden may occur when a facility's religious meal accommodations are so inadequate that a prisoner is forced to forego or significantly alter his religious practice to maintain proper nutrition. *See, e.g., Vincent v. Stewart*, 757 Fed. App'x 578, 580-81 (9th Cir. 2018) (refusal to provide plaintiff with a diet without "adverse physical effects" that "meets his religious needs substantially burden[s] his religious beliefs"); *Shakur v. Schriro*, 514 F.3d 878, 885 (9th Cir. 2008) (failure to provide meat-based religious meals despite "adverse health effects" from vegetarian meals may constitute a

REPORT AND RECOMMENDATION - 7

"substantial burden" on religion). However, "a temporary delay in accommodating religious practice does not violate the First Amendment when caused by ordinary administrative or institutional delay." *Mason v. Twin Falls Cnty. Sheriff*, No. 3:23-cv-00570-AKB, 2024 WL 625401, at *4 (D. Idaho Feb. 14, 2024) (citing *Tapp v. Stanley*, No. 04-cv-6400-CJS, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008)). Nor does it violate RLUIPA, which provides penal institutions some leeway in accommodating religious diets. *Mason*, 2024 WL 625401, at *6; *Saddiq v. Trinity Servs. Grp.*, No. 13-cv-1671-PHX-ROS-MHB, 2015 WL 13684700, at *9 (D. Ariz. Jan. 15, 2015) (finding First Amendment and RLUIPA religious accommodation claims deficient because plaintiff failed to allege how or for how long vegetarian religious meals deprived him of adequate nourishment).

During the month he was confined at MCJ, Plaintiff alleges that the vegetarian Kosher meals caused him physical discomfort due to his lactose-intolerance and other gastrointestinal issues. Dkt. 8 at 8–11. Plaintiff filed grievances about the discomfort caused by the religious meals and requested a meat substitute or gas-relief medication. *Id.* at 9. In response to his grievances, Plaintiff was told he could purchase Kosher meats from the commissary to supplement his meals. *Id.* at 10. Because of the discomfort caused by the vegetarian diet and because he could not afford to purchase Kosher meats to supplement his meals, Plaintiff chose to be taken off the religious meal plan until he could be seen by the medical provider. *Id.* At some point after he submitted his grievances, Plaintiff was seen by the medical provider and prescribed gas-relief medication. *Id.* However, Plaintiff states that the medication did not sufficiently relieve his symptoms when he resumed the Kosher diet. *Id.* Plaintiff does not specify whether he submitted further grievances before he was transferred out of MCJ.

REPORT AND RECOMMENDATION - 8

Plaintiff's contention that Defendants imposed a substantial burden on his religious beliefs is belied by his own allegations that, in the short time he was detained at MCJ, Defendants took steps to alleviate the discomfort allegedly caused by the plant-based Kosher meals. These steps included informing him of the Kosher meats available for purchase at the commissary and prescribing gas-relief medication for his symptoms. *See, e.g., Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 810–12 & n. 8 (8th Cir. 2008) (prison's meal plan regulations did not substantially burden Muslim inmate's free exercise rights where inmate had access to only vegetarian entrees and some of those entrees he had to pay for himself); *Garnica v. Washington Dep't of Corr.*, 965 F. Supp. 2d 1250, 1272 (W.D. Wash. 2013), *aff'd*, 639 F. App'x 484 (9th Cir. 2016) (same). As explained above, a temporary delay in accommodating an inmate's request for a religious diet does not constitute a substantial burden. *See Mason*, 2024 WL 625401, at *6 (seven-day delay in accommodating religious diet was not a substantial burden); *Holiday v. Giusto*, No. 03-cv-01385-AS, 2004 WL 1792466 at *5 (D. Or. Aug 10, 2004) (eighteen-day delay in providing religious meals, caused by administrative delay, was not a substantial burden); *Tapp*, 2008 WL 4934592, at *7 (three-month delay in providing a prisoner with religious meals did not substantially burden his sincerely held religious beliefs). Therefore, Plaintiff's allegations are insufficient to demonstrate the vegetarian Kosher meals at MCJ imposed a substantial burden on his religious beliefs.

<u>Reusable Trays</u>. Next, Plaintiff complains in broad terms that MCJ serves religious meals on reusable trays without safeguarding against cross-contamination with non-Kosher foods. Dkt. 8 at 12–14. However, he does not allege that any of his meals were served on a contaminated tray, nor does he allege that he was ever unable to eat a religious meal because it appeared to be served on a compromised tray. *See, e.g., Sprouse v. Ryan*, 346 F. Supp. 3d 1347, 1359 (D. Ariz.

REPORT AND RECOMMENDATION - 9

2017) (plaintiff failed to demonstrate reusable trays substantially burdened his religious beliefs). Even if Plaintiff had identified a discrete instance where cross-contamination occurred, RLUIPA does not require perfection in accommodating religious beliefs. *See Roles v. Christensen*, No. 1:19-cv-00292-DCN, 2019 WL 5580955, at *5 (D. Idaho Oct. 29, 2019) ("If a prison accommodates an inmate's religious dietary restrictions…, an infrequent failure to strictly follow those accommodations does not violate RLUIPA."); *Holsombach v. Norris*, No. 2:08-cv-00022-JMM-BD, 2009 WL 424166, at *6 (E.D. Ark. Feb. 18, 2009) ("Defendants cannot be held, however, to an absolute standard. They must take reasonable measures, but are not liable for random incidents of misconduct by inmates."). Therefore, Plaintiff has failed to plausibly allege MCJ's practice of serving religious meals on reusable trays substantially burdened his religious beliefs.

Additionally, Plaintiff does not specify which Defendants his religious accommodation claims are lodged against and, for those Defendants identified in the narrative of his claims, his allegations are largely insufficient to impose personal liability. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) ("Liability under § 1983 must be based on the personal involvement of the defendant."). For example, Plaintiff identifies Nurse Borden as denying his requests for a meat-based or lactose-free religious meal accommodation, but denials of prison grievances alone cannot serve as a basis for § 1983 liability. *See Billie v. Brown*, No. 2:19-cv-03078-VAP-SK, 2019 WL 6792806, at *2 (C.D. Cal. Aug. 28, 2019) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)); *see also Glass v. Scribner*, 2007 WL 586624, at *2 (E.D. Cal. Feb. 22, 2007) ("Consideration and denial of plaintiff's appeals relating to his religious claims does not create a basis upon which to impose liability on defendants for the alleged actions that were taken by the other defendants."). Regarding his reusable-tray claim, Plaintiff states only

REPORT AND RECOMMENDATION - 10

that Sergeant Newell informed him it was MCJ's policy to use reusable, as opposed to Styrofoam, trays. Dkt. 8 at 12. This is not enough to demonstrate Sergeant Newell was personally involved in serving him contaminated religious meals.

Accordingly, Counts III and IV of the Second Amended Complaint are deficient, making service of those claims inappropriate at this time.

    2.    <u>The religious accommodation claims are more appropriately brought in a separate action</u>.

Even assuming Plaintiff could cure the aforementioned deficiencies by amending his complaint for a third time, his religious accommodation claims are factually unrelated to his sufficiently pled Fourteenth Amendment claims and, as a result, Counts III and IV would be more appropriately brought in a separate action. The Federal Rules of Civil Procedure require unrelated claims against different defendants be pursued in separate lawsuits:

> The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party asserting a claim ... may join, either as independent or as alternate claims, as many claims ... as the party has against an opposing party.' Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. **Unrelated claims against different defendants belong in different suits**, not only to prevent the sort of morass [a multiple claim and multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to [three] the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (citing 28 U.S.C. § 1915(g)) (emphasis added). Therefore, a plaintiff seeking to pursue separate claims against different defendants must either (1) do so in separate actions or (2) plead sufficient facts showing the claims (a) arise out of the same occurrence or series of occurrences and (b) involve a common question of law or fact. *See George*, 507 F.3d at 607; *see also* Fed. R. Civ. P. 20(a)(2) (joinder of defendants not permitted unless both commonality and same occurrence requirements are satisfied).

REPORT AND RECOMMENDATION - 11

1    In Count I, Plaintiff alleges that Mason County, Nurse Borden, Provider Rice, Sergeant
2 Newell, and Chief Hansen subjected him to constitutionally deficient conditions of confinement.
3 Dkt. 8 at 5–7. More specifically, Plaintiff alleges he was forced to sit in his own feces for several
4 hours, made to undergo unsupported opioid withdrawals, and denied mental health medication.
5 *Id.* For Counts III and IV, Plaintiff does not specify which Defendants he believes violated his
6 constitutional rights, but the factual allegations on those counts involve the adequacy of religious
7 meal services at MCJ. Dkt. 8 at 8–14.

   Therefore, even if Counts I, III, and IV were brought against common Defendants, the
different factual backgrounds, practices, and policies involved in each claim would be more
efficiently pursued in separate actions. Because Count I is sufficiently pled and ready for service,
the deficient claims alleged in Counts III and IV should be dismissed without prejudice to
refiling in a separate action.

   3.    <u>Plaintiff's RLUIPA claim and his other requests for injunctive relief are moot</u>.

   Plaintiff's RLUIPA claim—to the extent it is brought against Defendants in their
individual capacities—and his other requests for injunctive relief should be dismissed as moot
because Plaintiff is no longer subject to the allegedly deficient meal services and other conditions
at MCJ.

   Article III of the United States Constitution limits the jurisdiction of the federal courts to
live cases and controversies. *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). As a result of this
limited jurisdiction, the mootness doctrine requires federal courts to dismiss claims that no
longer involve a "real and substantial" controversy. *Preiser*, 422 U.S. at 401 (citing *North
Carolina v. Rice*, 404 U.S. 244, 246 (1971)). The mootness doctrine is often implicated when a
plaintiff who challenges the policies or conditions of a correctional facility is transferred or

released from that facility. *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th Cir. 2001). Generally, the transferee or releasee's claims for prospective relief must be dismissed as moot. *Diley*, 64 F.3d at 1368; *Nelson*, 271 F.3d at 897. This is because the transferred or released plaintiff is no longer exposed to the complained of conditions and so a court order aimed at those conditions will do nothing to address his concerns. However, an exception exists if there is a "reasonable expectation" or "demonstrated probability" the plaintiff will return to the facility from which he was transferred or released and once again be exposed to complained of conditions. *See Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1986).

For the first time in his Second Amended Complaint, Plaintiff seeks injunctive relief aimed at Mason County's alleged practice of serving inadequate Kosher meals on reusable trays (Dkt. 8 at 16) and brings two failure-to-accommodate claims under RLUIPA (*id.* at 8–14), which provides only for injunctive and declaratory relief on claims against individual defendants, not monetary damages.[2] *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). However, at the time he initiated this action, Plaintiff had already been transferred out of pretrial detention at MCJ and into state custody at WCC. *See* Dkts. 1-1, 1-4. Because Plaintiff was released from pretrial detention to begin serving a sentence of confinement, there is no reasonable expectation he will return to MCJ and be exposed to the meal services or other conditions at that facility.

As a result, his RLUIPA claims against individual Defendants and his request for injunctive relief should also be dismissed as moot.

---

[2] It is unclear if municipalities may be sued for damages under RLUIPA if there is no evidence or allegation that they received federal funds. *See Wood*, 753 F.3d at 904. However, for the limited purpose of this Report and Recommendation, the Court assumes that Mason County may be sued for damages under RLUIPA.

REPORT AND RECOMMENDATION - 13

C.     **Plaintiff Failed to Cure Deficiencies for Defendants Guidry and Summit Foods**

Finally, in his initial Complaint, Plaintiff listed several individuals as Defendants without alleging any facts against them—among these Defendants were David Guidry and Summit Foods. Dkt. 1-1 at 4–5. Plaintiff was advised that "in any amended pleading, [he] should only include an individual as a defendant if he is able to set forth facts showing they caused or personally participated in causing harm that amounts to a constitutional violation." Dkt. 4 at 6. The Court also informed Plaintiff of the consequences for failing to correct his pleading deficiencies against all named Defendants. Dkt. 4 at 12 ("[I]f Plaintiff files an amended complaint that fails to correct the deficiencies identified above, the Court may recommend dismissal of …of all claims against…David Guidrey…and Summit Foods.").

Despite this, Plaintiff alleges no facts against Defendant Guidry in any count, nor does he allege facts against Summit Foods in Counts I and II of his Second Amended Complaint. Dkt. 8 at 3–7. In fact, the only mention of Defendant Guidry is near the end of the Second Amended Complaint where Plaintiff lists him as the "Lead Cook" at MCJ. *Id.* at 15.

As for Summit Foods, Plaintiff claims the private food contractor may have had some role in creating the menu for religious meals. Dkt. 8 at 13. However, he alleges no facts demonstrating that Summit Foods or any of its employees (including Defendant Guidry) had any knowledge about his specific need for religious meal accommodations or any personal involvement in the alleged failure to provide those accommodations.

Therefore, all claims against Summit Foods and Defendant Guidry should be dismissed for failure to cure deficiencies necessary state a cognizable § 1983 claim against them.

//

## IV.  CONCLUSION

For the reasons outlined above, the Undersigned recommends Plaintiff's medical privacy claims in Count II and his claims against Defendants Guidry and Summit Foods be **DISMISSED without prejudice** for failure to cure pleading deficiencies and for failure to state a claim. It is also recommended that Plaintiff's religious accommodation claims brought in Counts III and IV be **DISMISSED without prejudice** to be refiled in a separate action. Finally, Plaintiff's request for injunctive relief should be **DISMISSED as moot**. If the District Court agrees with this Report and Recommendation, the Undersigned will, in a separate Order, direct service of Count I of the Second Amended Complaint upon Defendants Kevin Hansen, Randy Newell, Bree Borden, Julia Rice, and Mason County.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the District Judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 12, 2024**, as noted in the caption.

Dated this 25th day of March, 2024.

Grady J. Leupold
United States Magistrate Judge